E-B GRAIN COMPANY v. WILLIS T. DENTON AND WIFE, KARLA S. DENTON AND STEPHENSON TOBACCO WAREHOUSE, INC.

No. 847SC609

(Filed 19 February 1985)

1. Agriculture § 5— sale of secured tobacco—breach of security interests by warehouse

The court properly denied defendant tobacco warehouse's Rule 12(b)(6) motion to dismiss where plaintiff's complaint, construed liberally, alleged that the provisions of a future advance note and security agreement were breached by selling tobacco subject to the security interest without plaintiff's prior written consent, that plaintiff had a recorded security interest in proceeds from the disposition of the tobacco, that defendant did not provide plaintiff with proceeds from the sale, and that defendant had refused to pay plaintiff any amount.

2. Uniform Commercial Code § 40; Rules of Civil Procedure § 56.4— existence of security agreement—unauthenticated copy—no objection or opposing evidence —summary judgment proper

There was no genuine issue of material fact as to the existence of a written security agreement executed by the debtors where the only evidence offered to prove the agreement was a copy attached to plaintiff's unverified

E-B Grain Co. v. Denton

complaint and where defendant did not object to the court's consideration of the document or offer any evidence in opposition that raised a genuine issue as to authenticity. G.S. 25-9-203(1).

**3. Uniform Commercial Code § 40— adequacy of debtors' address on financing statement—no prejudice**

A financing statement with the mailing address "Whitakers, N. C. 27891" was not so incomplete as to be misleading or as to interfere with the notice function of the filing; moreover, defendant had regular dealings with the debtor and was in a position to inquire about the security interest, and defendant admitted that it did not check the filings and thus could not have been prejudiced by technical defects in the document. G.S. 25-9-402.

**4. Uniform Commercial Code § 40; Agriculture § 5— U.C.C. financing statement —use of ASCS numbers**

A U.C.C. financing statement did not contain an ineffective description of the real property on which the tobacco used as collateral was grown where the statement listed the number of acres involved, the kind of crop grown on the land, the county in which the land was located, and the agriculture stabilization and conservation service numbers, which are shown on maps in ASCS county offices and which are used as a matter of course by those connected with the business of farming. Under G.S. 25-9-402(1), a description of real estate is sufficient if it permits identification of the land involved by recourse to public records. G.S. 25-9-110 (Cum. Supp. 1983).

**5. Rules of Civil Procedure § 56.4; Agriculture § 5— conversion of secured tobacco—summary judgment against warehouse proper**

Summary judgment was properly granted against defendant warehouse on a claim for conversion of tobacco used as collateral where the sale bills prepared by defendant contained ASCS farm numbers identifying the source of the tobacco. The future advance note and security agreement expressly prohibited sale of the collateral without plaintiff's prior written consent, which was not obtained; and defendant did not come forward in response to plaintiff's motion for summary judgment with any evidentiary material in support of its allegations of waiver, estoppel, and laches. G.S. 1A-1, 56(e), G.S. 25-9-307 (Cum. Supp. 1983).

**6. Courts § 2.4; Judges § 1.2— summary judgment heard on Saturday, out of session, over defendant's objection—proper**

A resident superior court judge had the authority to hear plaintiff's motion for summary judgment under G.S. 7A-47.1 on Saturday, out of session, and over defendant's written objection.

**7. Agriculture § 5— conversion of secured tobacco—summary judgment as to damages improper**

In an action for conversion of tobacco used as collateral, summary judgment as to damages was not proper. Tobacco sale bills provided by defendant warehouse were some evidence of fair market value but were not sufficient to establish the absence of any genuine issue of material fact.

APPEAL by defendant, Stephenson Tobacco Warehouse, Inc., from *Winberry, Judge*. Judgment entered 28 March 1984 in Superior Court, NASH County. Heard in the Court of Appeals 6 February 1985.

This is a civil action wherein plaintiff seeks to recover pursuant to a note and security agreement executed by defendants Mr. and Mrs. Denton, debtors, and for conversion of collateral by defendant Stephenson Tobacco Warehouse, Inc., (hereinafter Stephenson). The record discloses the following:

On 25 February 1983 plaintiff instituted this action by filing an unverified complaint containing allegations that are summarized herein: Plaintiff, a general farm supply business, sold defendants, Mr. and Mrs. Denton, "a quantity of farm supplies," in return for which the Dentons executed a "future advance note and security agreement." This document executed by defendants is attached to plaintiff's complaint; its terms provide that the Dentons "grant unto Secured Party a security interest under the North Carolina Uniform Commercial Code in . . . [a]ll crops . . . now planted, growing or grown, or which are hereafter planted . . . on the following described real estate. . . ." There follows descriptions of various farm lots. Also attached to the complaint are two financing statements filed by plaintiff in connection with the security agreement executed by defendants. Plaintiff's complaint further alleges that the Dentons owe plaintiff $63,430.12 on the account described above, that they have refused to pay this debt, and that they sold defendant Stephenson "a quantity of tobacco . . . on which plaintiff had a security interest." Defendant Stephenson, says plaintiff, "did not apply proceeds from the sale of the tobacco . . . to the account of the plaintiff and has refused to pay any amount." In its prayer for relief plaintiff asked for judgment against all defendants "jointly and severally, in the amount of $63,430.12."

Defendant Stephenson filed an answer and crossclaim, in which it denied the material allegations contained in plaintiff's complaint, raised several affirmative defenses, and sought indemnification by the Dentons. On 8 April 1983 the Clerk of Superior Court, Nash County, made an entry of default and on 26 August 1983 plaintiff obtained a default judgment against defendants, Dentons, in the amount of $63,430.12 plus attorney's fees. On 9

January 1984 plaintiff filed a motion for summary judgment, which was heard on 10 March 1984. From grant of summary judgment for plaintiff, defendant Stephenson appealed.

*Fields, Cooper & Henderson, by Milton P. Fields, for plaintiff, appellee.*

*Mast, Tew, Armstrong & Morris, P.A., by L. Lamar Armstrong, Jr., and George B. Mast, for defendant, appellant.*

HEDRICK, Chief Judge.

We note at the outset that in its complaint plaintiff sought to recover for conversion of tobacco grown in Edgecombe and in Nash Counties. While the record is less than clear, the parties conceded in oral argument before this Court that Judge Winberry allowed plaintiff to recover damages only for conversion of the tobacco grown in Nash County. In its argument before this Court plaintiff concedes that Judge Winberry properly denied plaintiff's claim based on conversion of the Edgecombe County tobacco because of plaintiff's failure to perfect its security interest in this tobacco. For purposes of this appeal, then, we are concerned only with the ruling of the trial court as it relates to the tobacco grown in Nash County.

[1]  Defendant first assigns error to the court's denial of its motion to dismiss for failure to state a claim for relief. Its contention in this regard rests on two grounds: First, it argues that Mr. and Mrs. Denton were not in default on the future advance note when the complaint was filed on 25 February 1983 because the face of the note reveals that principal and interest were not due and payable until 15 March 1983. This argument ignores provisions of the future advance note and security agreement which state:

> Debtor will . . . not . . . sell or otherwise dispose of [the collateral] or any interest therein, or permit others to do so, without the prior written consent of Secured Party. . . .
>
>      . . .
>
>      Default shall exist hereunder if Debtor fails to . . . observe or perform any covenants or agreements herein. . . . Upon any such default . . . Secured Party, at its option, with or without notice as permitted by law, may (a) declare the un-

paid balance on the Note and any indebtedness secured here-
by immediately due and payable. . . .

Construed liberally, as is required, *Sutton v. Duke*, 277 N.C.
94, 176 S.E. 2d 161 (1970), plaintiff's complaint sufficiently alleges
that defendants breached the provisions of the future advance
note and security agreement by selling tobacco subject to plain-
tiff's security interest to defendant Stephenson without plaintiff's
prior written consent; such violation of the terms of the agree-
ment constitutes default, rendering the unpaid balance on the
note immediately due and payable.

Defendant's second argument in support of its contention
that its motion to dismiss should have been granted is that "the
complaint failed to allege any claim against Stephenson or that
Stephenson owed plaintiff any sum of money." While the allega-
tions in plaintiff's complaint in regard to defendant Stephenson
are not as detailed as might be desired, we think it clear that
plaintiff has alleged facts sufficient to state a claim for relief. The
complaint asserts that plaintiff has a recorded security interest in
tobacco as well as proceeds from the disposition of such tobacco,
that this collateral was sold by the debtors to defendant Stephen-
son, that defendant Stephenson did not provide plaintiff with pro-
ceeds from the sale, and that defendant Stephenson has refused
to pay plaintiff any amount. These allegations are sufficient to
state a claim for relief based on conversion of collateral by
Stephenson. *See Hall v. Odom*, 240 N.C. 66, 81 S.E. 2d 129 (1954).
*See also* Annot., 96 A.L.R. 2d 208 (1964). This assignment of error
is without merit.

Defendant next assigns error to the court's grant of summary
judgment for plaintiff. Defendant contends that the competent
evidence introduced by plaintiff in support of its motion was in-
sufficient to show the absence of a genuine issue of material fact
as to each essential element of its claim for conversion.

Conversion is "an unauthorized assumption and exercise of
the right of ownership over goods or personal chattels belonging
to another, to the alteration of their condition or the exclusion of
an owner's rights." *Gallimore v. Sink*, 27 N.C. App. 65, 67, 218
S.E. 2d 181, 183 (1975) (citations omitted). Summary judgment was
properly granted in the instant case only if the materials properly
considered by the trial judge establish: (1) plaintiff's interest in

the property, and (2) defendant Stephenson's unauthorized assumption and exercise of the right of ownership to the exclusion of plaintiff's rights. We now turn to the evidence introduced by plaintiff in support of its motion for summary judgment.

[2] We first note that plaintiff's claim of "ownership" in the tobacco so as to support a claim for conversion is based on its claim that it possesses a valid security interest in the property pursuant to the North Carolina Commercial Code. *See F.D.I.C. v. Loft Apartments*, 39 N.C. App. 473, 250 S.E. 2d 693 (action for wrongful conversion of security interest may be maintained in North Carolina), *disc. rev. denied*, 297 N.C. 176, 254 S.E. 2d 39 (1979). In support of its claim in this regard plaintiff offered into evidence two documents: a copy of the "future advance note and security agreement," executed by the Dentons in favor of plaintiff, and a copy of a financing statement, admitted by defendant to be a genuine copy of the statement filed in the office of the Nash County Register of Deeds.

Defendant vigorously contends that plaintiff failed to offer competent evidence that "it had a valid and enforceable security agreement covering tobacco grown by the Dentons." Defendant bases this contention on its argument that the only evidence offered by plaintiff to prove the agreement between plaintiff and the Dentons was the copy of the security agreement attached to plaintiff's unverified complaint. Defendant asserts that proof of the security agreement was essential to plaintiff's claim, and that the copy offered by plaintiff was never properly authenticated and is thus incompetent evidence.

Defendant correctly asserts that proof of a written security agreement between plaintiff and the debtors is essential to its claim of an enforceable security interest in the tobacco. G.S. 25-9-203(1) provides in pertinent part:

> [A] security interest is not enforceable against the debtor or third parties . . . unless . . . the debtor has signed a security agreement which contains a description of the collateral. . . .

Consistent with the language of the statute, our Courts have recognized that "[t]he mere filing of a financing statement . . . does not necessarily indicate that a security interest exists." *Evans v. Everett*, 10 N.C. App. 435, 438, 179 S.E. 2d 120, 123 (cita-

tion omitted), *rev'd on other grounds*, 279 N.C. 352, 183 S.E. 2d 109 (1971). "[A] financing statement does not ordinarily *create* a security interest. It merely gives notice that one is or may be claimed." *Evans v. Everett*, 279 N.C. 352, 358, 183 S.E. 2d 109, 113 (1971) (citation omitted).

Defendant points out that the copy of the security agreement attached to the unverified complaint was never admitted by defendant to be genuine, and argues that because it was never properly authenticated, the security agreement could not be considered by Judge Winberry in ruling on plaintiff's motion for summary judgment. The record reveals that defendant, in its answer, generally denied plaintiff's allegations of a security agreement between plaintiff and the Dentons based on its lack of "sufficient knowledge to form a belief as to the truth of these allegations." The record does not reflect that defendant made timely objection to the court's consideration of the document it now challenges on appeal, nor does the record contain any evidentiary material introduced by defendant in opposition to plaintiff's motion for summary judgment that raises a genuine issue as to the authenticity of the security agreement. "[A]s is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged by means of a timely objection." *Insurance Co. v. Bank*, 36 N.C. App. 18, 26, 244 S.E. 2d 264, 269 (1978) (holding court did not err in granting summary judgment based on copy of certificate of deposit attached to unverified complaint). *See also Gebb v. Gebb*, 67 N.C. App. 104, 312 S.E. 2d 691 (1984) (holding court did not err in granting summary judgment based on copy of contract of sale attached to unfiled deposition of party). We hold the court correctly concluded that there exists no genuine issue of material fact as to the existence of a written security agreement executed by the debtors.

[3] Defendant next challenges the effectiveness of the financing statement introduced by plaintiff and identified as Exhibit 64. Defendant first alleges that the financing statement is not signed by the debtor as is required by G.S. 25-9-402(1). Exhibit 64, admitted by defendant to be a genuine copy of plaintiff's filing in Nash County, clearly bears the signatures of the debtors, however, and so we hold defendant's contention in this regard to be without merit.

Defendant also contends that the financing statement does not contain the debtors' mailing address as is required by G.S. 25-9-402(1). Examination of Exhibit 64 reveals that the debtors' address is listed as "Whitakers, N.C. 27891." Our Supreme Court has recognized that G.S. 25-9-402 "adopts a system of notice filing," *Evans v. Everett*, 279 N.C. 352, 355, 183 S.E. 2d 109, 112 (1971), which "indicates merely that the secured party who has filed may have a security interest in the collateral described." *Id.* at 356, 183 S.E. 2d at 112 (quoting Official Comment to G.S. 25-9-402(1)). Consistent with the "notice filing" policy identified in *Evans*, G.S. 25-9-402(8) (Cum. Supp. 1983) provides: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." We think that the debtors' mailing address as shown on Exhibit 64 is not so incomplete as to be misleading or as to interfere with the notice function of the filing. We are cognizant of the fact that defendant Stephenson had regular business dealings with the debtor, and so was in a position to directly inquire about plaintiff's security interest had defendant wished to do so. Furthermore, the deposition of defendant Stephenson's president, introduced by plaintiff, contains the following statement: "[W]e do not check the records in the various counties to determine if a crop lien has been filed." Because defendant Stephenson did not check the Nash County filings, it was not aware of the financing statement in question and thus could not have been prejudiced by technical defects in that document.

[4] Defendant next contends the Nash County financing statement was ineffective because "it contained no description of the real property on which the alleged tobacco was to be grown." G.S. 25-9-402(1) (Cum. Supp. 1983) requires that "[w]hen the financing statement covers crops growing or to be grown, the statement must indicate that the collateral is or includes crops and must contain a description of the real estate concerned." In the instant case, the financing statement identified "the real estate concerned" by means of farm numbers Q1959 and V2567, in addition to listing the number of acres involved, the kind of crop grown on the land, and the county in which the land was located. The record contains affidavits explaining that the United States Department of Agriculture, through the Agricultural Stabilization and

Conservation Service, assigns tobacco farms identification numbers, known as ASCS numbers. Each ASCS county office has maps showing the location of farms in that county as indicated by ASCS numbers. ASCS farm numbers are used as a matter of course by farmers and others connected with the business of farming, and are an integral part of the regulatory system established by the Department of Agriculture. Defendant Stephenson, in its answer to plaintiff's request for admissions, has admitted its familiarity with ASCS farm numbers and with the United States tobacco marketing program.

In its brief defendant argues that "the question of sufficiency of description cannot be answered simply by establishing that the property could have been identified through a series of searches." We do not agree, for we believe that under G.S. 25-9-402(1) a description of real estate is sufficient if the description permits identification of the land involved by recourse to public records. *See* G.S. 25-9-110 (Cum. Supp. 1983): "For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." *See also* Amended Official Comment to G.S. 25-9-110: "The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible the identification of the thing described."

[5] Having held that plaintiff introduced evidence sufficient to establish the absence of genuine issues of material fact as to its perfected security interest in the collateral, we next examine plaintiff's evidentiary showing as to the second element of its claim for conversion: defendant Stephenson's unauthorized assumption and exercise of the right of ownership to the exclusion of plaintiff's rights. In this regard defendant first contends that plaintiff has not demonstrated that the tobacco sold by Stephenson was tobacco subject to plaintiff's perfected security interest. The record, however, does not bear out defendant's contentions. Exhibits 1 through 62, admitted by defendant to be genuine copies of tobacco sale bills prepared by defendant, contain ASCS farm numbers identifying the source of tobacco for each sale. Identification of tobacco grown on farms Q1959 and V2567 and purchased from the Dentons through defendant Stephenson is thus easily accomplished by reference to these records.

Defendant next argues that plaintiff has not adequately demonstrated that its sale of the tobacco in question was unauthorized and wrongful. Defendant points to the rule, set out in the Amended Official Comment to G.S. 25-9-307 (Cum. Supp. 1983), which provides that a buyer of collateral takes free of a security interest where the secured party has expressly or impliedly authorized the sale. Defendant argues, in essence, that the evidence demonstrates that plaintiff knew or could have learned that the Dentons were selling their tobacco through defendant, and that plaintiff "failed to notify Stephenson or contact it in any way." This evidence, says defendant, raises genuine issues of material fact as to the affirmative defenses of waiver, estoppel, and laches. We do not agree. We first note that the future advance note and security agreement executed by the Dentons expressly prohibited sale of the collateral without plaintiff's prior written consent. Thus there was no express authorization of sale here. As to whether plaintiff may be said to have impliedly consented to such sale, and as to the related defenses of estoppel, waiver, and laches, we note the provisions of G.S. 1A-1, Rule 56(e), North Carolina Rules of Civil Procedure:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

In the instant case, defendant raised the affirmative defenses of waiver, estoppel, and laches in its answer. In response to plaintiff's motion for summary judgment, however, defendant did not come forward with any evidentiary material in support of its allegations. Consequently, the record discloses no genuine issue of material fact in this regard. We hold that summary judgment for plaintiff was properly granted.

[6] Citing *Hardin v. Ray*, 89 N.C. 364 (1883); *Coates v. Wilkes*, 94 N.C. 174 (1886); and *May v. Insurance Co.*, 172 N.C. 795, 90 S.E. 890 (1916), defendant next contends that Judge Winberry was without jurisdiction to hear plaintiff's motion for summary judgment "on Saturday, out of session and over Stephenson's written

objection." Suffice it to say that the cases upon which defendant relies are clearly distinguishable and do not support its contention. The controlling statute is G.S. 7A-47.1 which provides:

> In any case in which the superior court in vacation has jurisdiction, and all the parties unité in the proceedings, they may apply for relief to the superior court in vacation, or during a session of court, at their election. The resident judge of the judicial district and any special superior court judge residing in the district and the judge regularly presiding over the courts of the district have concurrent jurisdiction in all matters and proceedings in which the superior court has jurisdiction out of session; provided, that in all matters and proceedings not requiring a jury or in which a jury is waived, the resident judge of the district and any special superior court judge residing in the district shall have concurrent jurisdiction with the judge holding the courts of the district and the resident judge and any special superior court judge residing in the district in the exercise of such concurrent jurisdiction may hear and pass upon such matters and proceedings in vacation, out of session or during a session of court.

We take judicial notice that Judge Winberry is a resident superior court judge in the seventh judicial district, of which Nash County is a part. We believe Judge Winberry clearly had authority under G.S. 7A-47.1 to hear plaintiff's motion for summary judgment, even though defendant's counsel objected. To interpret the statute in the manner advocated by defendant would mean that no superior court judge could hear any matter, whether in or out of session, without "all the parties unit[ing] in the proceedings." The assignment of error is without merit.

[7] Defendant finally contends that "the court erred in its calculation of damages that plaintiff was entitled to recover from Stephenson." It is well settled "under the common law, that the measure of damages for a wrongful conversion of personal property is the fair market value of the chattel at the time and place of conversion," *Russell v. Taylor*, 37 N.C. App. 520, 524, 246 S.E. 2d 569, 573 (1978), limited, of course, to the extent of plaintiff's ownership interest in the property converted, i.e., the amount secured by the collateral in question. "Fair market value is the

price the property would bring when offered for sale by one who desires, but is not compelled to sell, and is bought by one desiring to buy, but not under the necessity of purchasing." *City of Kings Mountain v. Cline*, 19 N.C. App. 9, 10, 198 S.E. 2d 64, 65 (1973). Our Supreme Court has said that summary judgment may be proper on the issue of damages "where the moving party sufficiently establishes by competent documents that a liquidated amount is owing him, and the opposing party fails to show facts which dispute that evidence." *Conner Co. v. Spanish Inns*, 294 N.C. 661, 678, 242 S.E. 2d 785, 795 (1978). Where damages are not reduced to a liquidated amount, however, but are instead measured by fair market value, a genuine issue of material fact is presented which must be resolved by the jury. 22 Am. Jur. 2d *Damages* Section 342 (1965) ("The assessment of unliquidated damages must rest in the sound discretion of the jury, under the guidance and control of the trial judge.").

In the instant case, the only evidence before Judge Winberry in regard to damages was in the form of tobacco sale bills showing the amount paid by defendant Stephenson to the Dentons after Stephenson deducted its commission, a handling fee, and an auction fee from the amount it received from tobacco companies purchasing the tobacco. While some evidence of the fair market value of the tobacco at the time and place of conversion, the tobacco sale bills relied on by the judge are not sufficient to establish the absence of any genuine issue of material fact in this regard. Accordingly, summary judgment as to damages owed plaintiff by defendant Stephenson must be vacated and the cause remanded for trial on this issue.

The result is: That portion of the judgment declaring defendant liable to plaintiff for its wrongful conversion of tobacco grown on and sold from Nash County farm lot numbers Q1959 and V2567 will be affirmed; that portion of the judgment assessing damages in the amount of $45,007.53 with interest will be vacated and the cause will be remanded to the superior court for trial on the issue of the amount of damages plaintiff is entitled to recover from defendant for its wrongful conversion of plaintiff's security interest in the tobacco grown on and sold from the Nash County farms.

Affirmed in part, vacated and remanded for trial in part.

Judges BECTON and COZORT concur.